## HARRIGAN & REID CO. v. BURTON.

1. MUNICIPAL CORPORATIONS—ORDINANCES—VALIDITY PRESUMED.

   A presumption prevails in favor of the reasonableness and validity in all particulars of a municipal ordinance unless the contrary is shown by competent evidence or appears on the face of the enactment.

2. SAME—FIRE PREVENTION—POLICE POWER.

   A municipality, under its general police power, has authority to adopt proper and reasonable ordinances having for their purpose prevention of fires and protection of life and property from conflagrations.

3. SAME—ORDINANCES INTERFERING WITH RIGHTS OF CITIZENS IN LAWFUL BUSINESS VOID.

   Municipal ordinances, though ostensibly enacted as public regulations, which are so framed as to control or regulate a common and useful private business or occupation are

---

On questions relating to class legislation restricting contracts in business, see note in 21 L. R. A. 790.

On validity of statute or ordinance vesting discretion as to license in public officials without prescribing a rule of action, see note in 12 A. L. R. 1435.

subject to review and investigation in the courts to determine their validity by the test of whether, under the guise of a police regulation, there is an arbitrary, unreasonable, or unwarranted interference with the constitutional rights of the private citizen to pursue a lawful business or calling, and to make contracts with others in relation thereto.

4. SAME—LICENSES—ORDINANCE REGULATING INSTALLING HEATING PLANTS VOID.

A municipal ordinance requiring persons or firms engaged in the business of installing heating systems in dwellings to secure a license and file a bond to protect purchasers of heating plants is void as an unlawful interference with the right of private citizens to contract with reference to a legitimate business.

5. SAME—CLASS LEGISLATION—DWELLINGS.

Said ordinance is void as discriminating and unreasonable class legislation, in that its provisions are made applicable only to dwellings, expressly excepting hotels, club houses, hospitals, jails, reformatories, and asylums, and leaving entirely untouched all other kinds of buildings in which heating systems are necessarily used.

6. SAME — ORDINANCE FAILING TO PROVIDE STANDARD OF FITNESS VOID.

Said ordinance is also void in that, while it prohibits all corporations and persons, not excluding the owner, from installing in a dwelling any heating system without a license, no method of application, or qualifications, or standard of fitness for guidance of the licensing board are provided, by meeting which the applicant would of right be entitled to a license.

7. SAME — ORDINANCES—REASONABLE REGULATIONS NECESSARY TO VALIDITY.

Reasonable regulations and a uniform rule of action in its determination are essential to the validity of a municipal ordinance and it may not be left to the arbitrary decision of an administrative officer or board.

Appeal from Wayne; Moynihan (Joseph H.), J. Submitted June 7, 1923.    (Docket No. 79.)    Decided October 1, 1923.

Bill by Harrigan & Reid Company against Frank

Burton, commissioner of the department of buildings and safety engineering of the city of Detroit, and another to enjoin the enforcement of an ordinance. From a decree for plaintiff, defendants appeal. Affirmed.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*Clarence E. Wilcox,* Corporation Counsel, and *Walter Barlow,* Assistant Corporation Counsel, for defendants.

STEERE, J.   Plaintiff is a Michigan corporation extensively engaged, among other things, in the business of selling and installing, as heating contractor and engineer, heating systems and apparatus in dwellings in the city of Detroit.   Defendant Burton is commissioner in charge of the department of buildings and safety engineering of the city of Detroit, and defendant Brozo is chief inspector of the heating division of said department.   Plaintiff filed this bill to restrain defendants from threatened enforcement against it of an ordinance of the city of Detroit entitled:

"An ordinance to regulate the installation of heating and warming systems or apparatus in dwellings in the city of Detroit."

The case was heard on bill and answer under which the only issue raised and argued is whether the ordinance in question is void and unenforceable because unconstitutional.   Upon the hearing the circuit court of Wayne county in chancery held the ordinance unconstitutional because unreasonable, discriminatory and, in certain particulars, arbitrary and oppressive.

The ordinance consists of 15 sections, the first being as follows:

"No person, firm or corporation shall install or cause to be installed any heating or warming systems or apparatus in dwellings in the city of Detroit without a contractor's license from the department of buildings

and safety engineering and filing a bond in the sum of $1,000 to indemnify purchasers of heating and warming systems or apparatus installed in dwellings in Detroit under this ordinance, if such systems or apparatus are found not to comply with the provisions of this ordinance and rules formulated under section 8."

Section 2 provides that no installation shall be made without a permit from the department of buildings and safety engineering. Section 3 provides for such department accepting a deposit to cover anticipated permits when application is made in writing by any contractor under the ordinance. Section 4 requires the department to provide application blanks on forms containing such information as it desires for public record, which blanks shall be considered a plan of the proposed installation when containing a record of the number of rooms and general dimensions and character of the building in which the installation is to be made. By section 5 the corporation or person installing any heating systems or apparatus in dwellings in the city of Detroit is required to—

"file with the department the manufacturer's number and a published rated capacity for heating or warming of the various types or sizes of apparatus, whether boilers for steam or hot water, or warm air furnaces."

Section 6 requires the department to furnish all holders of contractor's licenses with application blanks, and to issue a permit within 48 hours after receipt of an application, if properly filled out. Sections 7 and 8 are as follows:

"SECTION 7. Installation of heating or warming systems or apparatus shall have a capacity to maintain a temperature of seventy degrees Fahrenheit in parlors, libraries, main halls, living rooms, dining rooms and bath rooms in which registers or radiators are placed (sun parlors excepted), and a temperature of sixty-five degrees Fahrenheit in sleeping apartments or kitchens in which registers or radiators are placed,

and said internal temperature shall be possible of maintenance while outdoor air is at zero Fahrenheit; Provided, a suitable chimney flue is furnished and all doors, windows and the dwelling are reasonably well constructed; Provided, however, that nothing in this section shall be construed so as to interfere with the right of an owner or his agent from entering into a written contract or agreement for any other specific temperature he may desire.

"Sec. 8. Rules for the installation of heating and warming systems or apparatus shall be formulated by the board of rules and five representatives of contractors installing heating or warming systems or apparatus, in the city of Detroit. The rules and regulations formulated shall become effective when approved by the common council. The five representatives above mentioned shall be appointed by the mayor and with the board of rules shall form a joint board for the purpose of formulating the rules mentioned in this section. No rules formulated under this ordinance shall apply to the design of systems or apparatus."

Section 9 requires reports to be made to the department by holders of licenses on blanks furnished to them, with a provision that the contractor's license may be revoked "for neglect to report installation or poor installation." Section 10 provides that no inspection shall be made of the heating of any dwelling except upon written statement of the occupant or owner claiming the same to be defective and asking inspection, upon receipt of which and payment of a fee, to be decided upon by the board of rules with approval of the council, inspection will follow after due notice to the contractor. Section 11 provides:

"This ordinance shall not apply to hotels, hospitals, club houses, jails, reformatories or asylums."

The remaining sections relate to fees and other matters immaterial here, except that violation of any of the provisions of the ordinance is made a misdemeanor punishable by fine and imprisonment.

The substance of the propositions urged in defense of this ordinance is that its enactment is within the police power of the common council of Detroit, under the so-called "home rule act," as a public safety measure for fire regulation to protect the city and its inhabitants against conflagrations; that it is presumed valid and the burden of proving it unreasonable and invalid rests upon plaintiff. While plaintiff's contention is, as the trial court found, that the invalidity of the ordinance in the particulars charged appears on its face.

The generally accepted rule is that a presumption prevails in favor of the reasonableness and validity in all particulars of a municipal ordinance unless the contrary is shown by competent evidence, or appears on the face of the enactment. Unquestionably the municipality under its general police power has authority to adopt proper and reasonable ordinances having for their purpose prevention of fires and protection of life and property from conflagrations as, within reasonable and legal limits, its legislative body may deem a public necessity; but municipal ordinances, though ostensibly enacted as public regulations, which are so framed as to control or regulate a common and useful private business or occupation in life are subject to review and investigation in the courts to determine their validity by the test of whether, under the guise of a police regulation, there is an arbitrary, unreasonable or unwarranted interference with the constitutional rights of the private citizen to pursue a lawful business or calling, and to make contracts with others in relation thereto. *Dobbins* v. *Los Angeles*, 195 U. S. 223 (25 Sup. Ct. 18); 2 Dillon on Municipal Corporations (5th Ed.), § 599; 3 McQuillin on Municipal Corporations, § 893.

The business of installing heating and warming systems or apparatus in dwellings in the city of Detroit

and elsewhere, and to make contracts for so doing, is in itself a harmless, useful and necessary industrial pursuit.  By this ordinance no person, firm or corporation can engage in that business in Detroit without a contractor's license, secured from the department of buildings and safety engineering, and filing a bond of $1,000 to indemnify purchasers from it, or them, of the heating system or apparatus to be installed in dwellings in Detroit.  Compelling a bond from the contractor to protect, or indemnify, the private citizen who chooses to make a legitimate contract with him for the purchase of a heating system or warming apparatus and installing it in his private dwelling, suggests a measure of paternalism in the ordinary business relations of private parties beyond the normal scope of the police power of a municipality, as intimated in *People, ex rel. Valentine,* v. *Berrien Circuit Judge,* 124 Mich. 664 (50 L. R. A. 493, 83 Am. St. Rep. 352).  It was there said that even the legislature of this State is—

"not empowered by the Constitution to regulate contracts between its citizens who are engaged in legitimate commercial business, or to require any class of persons to pay a fee for the right to carry on business, or to give a bond to perform their contracts which other parties may choose to make with them."

Another questionable feature of the ordinance as a measure of fire protection exercised under the police power, is that the restrictions and burdens it imposes are directed only against "dwellings," limited further by especially excepting hotels, club houses, hospitals, jails, reformatories and asylums, and also leaves entirely untouched all other kinds of buildings in which heating systems or apparatus of some kind are necessarily installed and used, such as stores, office buildings, restaurants, banks, churches, station houses, factories, shops, etc.  If fire protection was the pur-

pose, an ordinance which only imposes the safe-guarding regulations on dwellings, and leaves free to ignore them all other buildings in the city wherever located which with their heating systems are likewise subject to the danger sought to be guarded against, savors strongly of discriminating and unreasonable class legislation.    *State* v. *McCormick*, 120 Minn. 97 (138 N. W. 1032).

A yet more vital infirmity in this ordinance is its uncharted provisions prohibiting all corporations and persons, not excluding the owner, from installing in a dwelling any apparatus or system for keeping it warm without a license, followed by a permit, the requirements for which are not defined to the exclusion of arbitrary and discriminating official action in granting or refusing the same.    Application blanks for permits provided for in section 4 are to be furnished to "holders of contractor's licenses" (§ 6) and they only may install heating plants in dwellings; but no method of application, nor qualifications or standard of fitness for guidance of the licensing board are provided, by meeting which the applicant would be of right entitled to a license.

In *G. F. Redmond & Co.* v. *Michigan Securities Commission*, 222 Mich. 1, this court recently pointed out that in the regulation of trades or occupations exercise of the police power—

"is capable of definite expression and must, if delegated to a commission or administrative board, define its purpose and means of attainment thereof, and do this in language leaving no wide administrative discretion, and no discretion at all of a legislative nature."

Reasonable regulations and a uniform rule of action in its determination are essential to the validity of a municipal ordinance.    It cannot be left to the arbitrary decision of an administrative officer or board.

This case is governed in principle by *Devereaux* v. *Genesee Township Board*, 211 Mich. 38, and cases there cited.

The decree will stand affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.